## MUNN v. LENTZ.

1. SCHOOLS AND SCHOOL DISTRICTS—DISTRICT CREATED BY SPECIAL
   ACT COULD BE ALTERED ONLY BY LEGISLATURE.

   Fractional primary school district created by special act of
   legislature (Act No. 283, Local Acts 1901) as an entity could
   be altered or destroyed only by legislature itself, or by some
   agent exercising properly delegated powers for that purpose.

2. SAME—TOWNSHIP BOARD WITHOUT POWER TO ALTER DISTRICT
   CREATED BY SPECIAL ACT.

   Township board, having power under general school law to alter
   boundaries of primary school districts (Act No. 31, Pub. Acts
   1909), is nevertheless without power to change boundaries or
   destroy entity of fractional primary school district created
   by special act of legislature (Act No. 283, Local Acts 1901)
   which stands unrepealed.

3. SAME—LOCAL ACT NOT REPEALED BY SCHOOL CODE.

   Act No. 283, Local Acts 1901, creating fractional primary school
   district, was not repealed by school code (Act No. 319, Pub.
   Acts 1927); not having been included in repealing section
   (chapter 37, § 1).

4. SAME—TOWNSHIP ELECTORS WITHOUT POWER TO DESTROY
   IDENTITY OF DISTRICT CREATED BY SPECIAL ACT.

   It is beyond power of electors of township acting pursuant to
   Act No. 319, Pub. Acts 1927, to destroy legal identity of
   fractional primary school district created by special act of
   legislature, which stands unrepealed, by voting to organize
   township into single school district.

5. SAME—CONSENT OF GRADED DISTRICT NECESSARY TO BE INCLUDED
   IN TOWNSHIP DISTRICT—REASONABLE TIME.

   Consent of electors of graded school district, necessary to its
   being included in township school district (Act No. 319, Pub.
   Acts 1927, pt. 1, chap. 4, § 2), should be given within reason-
   able time.

6. SAME—REMOTENESS.

Consent of electors of graded school district necessary to its being included in township school district, which was given two years before vote was taken on organizing township school district, was too remote.

Appeal from Barry; McPeek (Russell R.), J. Submitted October 29, 1931. (Docket No. 152, Calendar No. 35,831.) Decided December 8, 1931.

Separate *quo warranto* proceedings by H. F. Munn and other taxpayers, and school district officers of six school districts against Frank C. Lentz and others as officers of an alleged unlawfully organized township school district. Cases consolidated for trial. Judgments for plaintiffs. Defendants appeal. Affirmed.

*James H. Mustard* and *Robert A. Waterman*, for plaintiffs.

*Kim Sigler*, for defendants.

CLARK, J. Pursuant to provisions of part 1, chap. 4, Act No. 319, Pub. Acts of 1927, 2 Comp. Laws 1929, § 7131 *et seq.*, on January 2, 1931, the following question was submitted to the electors of Castleton township in Barry county: "Shall Castleton township be organized into a single school district?" A majority voted "Yes," and thereafter a board of education was elected. There were 10 school districts affected, six of which refused to turn over to the board of the township school district money, property, etc., but, on the contrary, each of said districts, as plaintiffs, and joined with its respective officers and certain taxpayers, as plaintiffs, instituted six proceedings in *quo warranto* against the

township, the township school district, and the members of its board of education as defendants to test the validity of the organization and the existence of the township school district and the title of its officers. The suits were consolidated, tried together, and are so presented here.

Plaintiffs had judgments. Defendants have appealed.

One plaintiff district, Fractional Number 2 of the townships of Hastings and Castleton, was created by Local Act No. 283, Local Acts 1901, and to and including the time in question, so remained. The local act provides:

"The same to be organized in the same manner as school districts under the general law, whose boundaries are determined by the board of school inspectors."

This is equivalent to saying that it became a primary school district (Act No. 164, Pub. Acts 1881, 2 Comp. Laws 1897, § 4646, as amended by Act No. 37, Pub. Acts 1901, and Act No. 31, Pub. Acts 1909, 2 Comp. Laws 1915, § 5648), and, as the reference is to "general law," that it was to function under general law as it might be from time to time. *Cole v. Wayne Circuit Judge*, 106 Mich. 692; Lewis' Sutherland, Stat. Const. (2d Ed.), § 405; *Public Schools of Battle Creek v. Kennedy*, 245 Mich. 585.

Might the then township board of school inspectors (later township board, Acts Nos. 31 and 66, Pub. Acts 1909), having power under general law to alter boundaries of primary school districts, on the day following the special legislative creation of this district, or on any later day, have taken the district apart and restored the parts to the other districts from which they had been taken? Might such board

have destroyed this special legislative creation or revoked its special charter? It is apparent that it might not. The district as an entity could be altered or destroyed only by the legislature itself, or by some agent exercising properly delegated power for that purpose.

The trial judge so held, and he prepared a well-reasoned and helpful opinion, from which we quote:

"In *School District* v. *Dean,* 17 Mich. 223, it appeared that the legislature by special act of 1867 established a new school district out of parts of three old ones in the same township. The new district was duly organized on the 1st of March, 1867, and on April 2d, the same year, the township board of school inspectors 'assumed to set back to the old districts the territory carved out of them by the special act, and to dissolve the new district.' * * * The court said:

" 'It must be admitted that there is no middle ground. Either the district must be independent of change by the inspectors, or it must be as much under their sway as other districts. As a corporation, brought into existence by the direct act of the legislature, it could not be dependent upon any general act, or upon the inspectors, for its continuance; nor could it exist if its organic act should be repealed. It would, therefore, stand by itself as an independent corporate existence, and deriving no vital support from the law under which inspectors form districts; and it is difficult to see how it could be essentially altered without an alteration of the act, which stands, in some respects, in the place of a charter. * * *

" 'There would necessarily be a period, then, when the corporation created by the act in question would be exempt from local interference. The legislature have not declared by this act, nor can it be implied from any other, when this period of exemption should terminate. It is a fair inference, then, that it was meant to be perpetual. The district in question was created by direct legislation, and a continuing independent power to dissolve it, vested in another body, would be anomalous. It would suppose two powers in operation at the same time, one of which would have the right to create, and the other, at the same instant, the right to destroy, while one of these conflicting authorities could only exist by the sufferance of the other.'

"If it be urged in the instant case that the language of Local Act No. 283, 1901, provides, in terms,

that Fractional District No. 2 'be organized in the
same manner as school districts under the general
law, whose boundaries are determined by the board
of school inspectors,' from which (it be urged) it
should be deduced that special reference to and de-
pendence upon the general law were obvious, it may
in reply be noted that in the *Dean Case,* according
to the opinion, 'the second section (of the local act)
required that the same course should be taken for
the organization of the new district as already pre-
scribed by law in the case of districts formed by
township inspectors.' Comparing this with the lan-
guage of Act No. 283, it will be observed that the
context is similar, and the purport identical, clearly
indicating that the Supreme Court regarded such a
provision as no bar to the conclusions above quoted."

See, also, *Township of Harrison* v. *Schoolcraft Su-
pervisors,* 117 Mich. 215; *Attorney General* v. *Marr,*
55 Mich. 445; *Board of Education* v. *Straub,* 182
Mich. 665.

The local act was not repealed by Act No. 319,
Pub. Acts 1927, called the School Code (2 Comp.
Laws 1929, § 7094 *et seq.*). The latter act containing
a general repealing clause, section 1, chap. 37 (2
Comp. Laws 1929, § 7697), and repealing by enumer-
ation a large number of public acts is silent in the
concluding repealing section as to local acts.

The following from *Rodgers* v. *United States,* 185
U. S. 83 (22 Sup. Ct. 582):

" 'The general principle to be applied,' said
Bovill, C. J., in *Thorpe* v. *Adams* (L. R. 6 C. P. 125,
135,) 'to the construction of acts of parliament is
that a general act is not to be construed to repeal
a previous particular act, unless there is some ex-
press reference to the previous legislation on the
subject, or unless there is a necessary inconsistency
in the two acts standing together.' 'And the reason

is,' said Wood, V. C., in *Fitzgerald* v. *Champenys*, (30 L. J. R. N. S. Eq. 777, 782; 2 Johns. & Hem. 31, 54 [70 Eng. Repr. 958]), 'that the legislature having had its attention directed to a special subject, and observed all the circumstances of the case and provided for them, does not intend, by a general enactment afterwards to derogate from its own act when it makes no special mention of its intention so to do'"—and citing *Crane* v. *Reeder*, 22 Mich. 322.

It is significant that section 57, chap. 8, pt. 1, of the act (2 Comp. Laws 1929, § 7322), providing of districts of the first class, repealed "all general or special acts not herein re-enacted which apply solely to school districts of the first class," and it is significant that in section 16 of chap. 27, pt. 2 (2 Comp. Laws 1929, § 7621), rights conferred by certain special acts to license teachers are expressly repealed, and also significant that these are the only instances in Act No. 319 that we have found where reference is made to local acts.

It shows the legislature had local acts in mind, and, by repealing them or any of them in such very limited degree, they evidenced an intention not to repeal them or any of them in any other degree.

Moreover there is practical construction in this regard. The legislature, by Act No. 9, Local Acts 1931, expressly repealed the local act in question.

We conclude that, at the time of the attempted creation of the defendant township school district, Local Act No. 283 being then in force, it was beyond the power of the voters of the township, and they had no such delegated power, to destroy the legal entity, Fractional School District Number 2, of the townships of Hastings and Castleton, so created by special act of the legislature. This necessitates affirmance of the judgments, but, as the matter is likely to arise again, we speak of another question.

One district, Fractional District Number 1 of Castleton and Maple Grove townships, is a graded district of ten grades or more and whose school-house is more than two miles from the center of the township. The consent of the electors of the graded district was necessary to its being included in a township school district. Section 2, chap. 4, pt. 1, Act No. 319, Pub. Acts 1927 (2 Comp. Laws 1929, § 7132). The statute here fixes no time within which such consent shall be given. It should be within a reasonable time. Where, as here, the consent was more than two years before the vote on the question of organizing a township school district, and where, during that period, there was submitted to the voters of the graded district a proposal to bond for a school-house, which indicates abandonment of the consent, the consent should be treated as too remote. *Peth v. Martin,* 31 Wash. 1 (71 Pac. 549).

Affirmed. Single costs to appellees.

BUTZEL, C. J., and WIEST, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred. POTTER, J., did not sit.