[No. 13864.   Department Two.   July 5, 1917.]

STIMSON TIMBER COMPANY, *Respondent*, v. MASON COUNTY, *Appellant*.[1]

SCHOOLS AND SCHOOL DISTRICTS — BONDS — ELECTIONS — TIME OF OPENING POLLS. A school district election for the issuance of bonds for the construction of a schoolhouse is void where, pursuant to notice, the polls were not opened until two o'clock, in view of Rem. Code, § 4658, which provides that, unless otherwise designated in the notice of election, the polls shall be open at one o'clock in the afternoon and close at eight o'clock, but that the board may, previous to giving notice, determine on an hour for closing not later than four o'clock; the requirement that the polls be open at one o'clock being mandatory.

SAME—DISTRICT BOARDS—POWER TO BUILD SCHOOLHOUSE. Under Rem. Code, §§ 4493, 4538, providing that the board of directors of school districts of the third class shall build schoolhouses when directed by a vote of the district to do so, and § 4664, authorizing the calling of a special meeting of the voters to determine the question, the school directors have no authority to build a schoolhouse, where their only authority was a special election upon the question of bonds which was void for want of legal notice of the election.

TAXATION—RECOVERY OF VOID TAX—PARTIES — TRUSTEE — SCHOOL DISTRICTS. A school district is not a necessary party defendant in an action to recover an illegal school district tax, where the collection was made by the county as trustee for the school district.

SAME—VOID TAX—RECOVERY—PROTESTING LEVY. Where a tax is void, it is not necessary to protest its levy, but the taxpayer may wait until the tax is collected under protest, and recover back the tax paid.

Appeal from a judgment of the superior court for Mason county, Mitchell, J., entered October 30, 1916, in favor of the plaintiff upon the pleadings, in an action to recover a tax paid.   Affirmed.

*R. A. Lathrop* and *A. C. Bayley*, for appellant.

*Ballinger & Hutson*, for respondent.

MOUNT, J.—This action was brought to recover a tax, alleged to be void, paid under protest.   The appellant filed a

[1]Reported in 166 Pac. 251.

demurrer to the complaint upon the grounds: First, that the court had no jurisdiction of the subject-matter; second, that the plaintiff had no legal capacity to sue; third, that there was a defect of parties defendant; fourth, that the complaint does not state a cause of action; fifth, the action was not commenced within the time limited by law. The demurrer was overruled and the defendant answered, admitting the material allegations of the complaint, and the court entered a judgment upon the pleadings. This appeal is from that judgment.

The complaint alleged in substance: That the plaintiff owned certain real estate in Mason county; that the taxes for the year 1915, assessed against the plaintiff's property, included a special four mill tax levied for School District No. 45, of Mason county, for the purpose of constructing a schoolhouse; that, when the taxes became due, the plaintiff offered to pay all the taxes except the four mill levy, which offer was refused, and thereupon the plaintiff paid the whole tax and protested against the payment of the four mill tax levied for the purpose above stated; that it was necessary to pay the taxes in order that the plaintiff might utilize its property.

The complaint alleged that the four mill tax levied for the school district was void because the board of directors of the school district were not authorized to build the schoolhouse for which the tax was levied; that, on the 17th day of June, 1915, the board of directors of the district passed a resolution as follows:

"Resolved: That the school board issue $1,500 in bonds for the purpose of building a new schoolhouse upon the present site, these bonds to be $100 each, payable in five years. The school board reserve the right, however, to pay or redeem said bonds or any part of them at any time after one year from date of bond."

And that, on the same day, the board of directors passed another resolution as follows:

"Resolved: That an election shall be called on the 30th day of June, 1915, for the purpose of voting $1,500 bonds to build a new schoolhouse on the present site; said bonds to be for $100 each, payable in five years. The school board reserve the right, however, to pay or redeem said bonds or any part of them at any time after one year of the date of bonds."

The complaint then alleged that a notice of an election for the 30th day of June, 1915, was given, that the notice stated, "The polls will be open from 2 o'clock p. m. to 5 o'clock p. m.," and that said polls were actually open at such hours only; that at said election at said time, twenty-nine persons voted for the issuance of the bonds, and fifteen persons voted against the issuance thereof; that thereafter, on August the 2d, 1915, the board of directors let a contract in the sum of $1,212, for the building of a school house, which was afterwards constructed; that no bonds were ever issued by the district; that, on the 6th day of August, 1915, the board of directors reported to the county commissioners their annual estimate, including a four mill tax for the erection of said building, and thereafter the county commissioners levied for collection a special tax of four mills.

It is argued by the respondent that the bond issue was void for two reasons: First, because the polls at the bond election were not open until 2 o'clock, instead of at 1 o'clock as provided by statute; and second, because the directors of the district were not authorized to build a schoolhouse, and if the vote for the school bonds be deemed an implied authority for the building of the schoolhouse, it was conditional upon the issuance of the bonds, and the plans not having been pursued, the authority ceased. The court sustained these contentions of the respondent. The appellant contends here that the notice stating that the polls would be open from 2 o'clock p. m. until 4 o'clock p. m. was an irregularity merely, and that the result of the election was implied authority for the board of directors to construct the building. This presents the principal questions in the case.

The statute, Rem. Code, § 4658, provides, in regard to the notice, that:

"Unless otherwise designated in the notice of election, the polls shall be open at 1 o'clock in the afternoon and close at 8 o'clock in the afternoon, but the board of directors may, in districts of the second or third class, previous to giving notice of election, determine on an hour before 8 o'clock for closing, but they must not be closed earlier than 4 o'clock in the afternoon. In no case shall the polls be opened before the hour named in the notice, nor kept open after the hour fixed for closing the polls, but if there is not a sufficient number of electors present at the hour named for opening the polls to constitute a board of election, it shall be lawful to open the polls as soon thereafter as a sufficient number of electors is present."

We think it is plain from this statute that the polls are required to be open at 1 o'clock in the afternoon, except where there is not a sufficient number of voters present at that hour to constitute a board of election. It is discretionary with the board to determine on an hour before 8 o'clock in the afternoon when the polls may be closed. It is apparent from this section of the statute that the polls must be open at 1 o'clock, and not closed earlier than 4 o'clock in the afternoon.

In the case of *Peth v. Martin*, 31 Wash. 1, 71 Pac. 549, we had under consideration a statute involving this same question, and held that the statute was mandatory, and that a notice of an election in violation of the terms of the statute rendered the election unauthorized.

As stated by the respondent, if the board of directors were authorized to fix a different hour than 1 o'clock in the afternoon for opening the polls, and also a time between 4 and 8 o'clock for closing the polls, they might fix the hour for opening the polls at 3:45 o'clock, and for closing the polls at 4 o'clock, so that the polls should be open but fifteen minutes. It was to avoid any such condition that the legislature fixed the hour for opening the polls at 1 o'clock, but authorized the directors to close at an earlier hour than 8 o'clock, but limited

the closing hour to 4 o'clock. It was the duty of the board of directors to give notice that the election would be held between the hours of 1 and 4 o'clock. This was the shortest time which, under the statute, could be fixed for holding the election. It is plain, therefore, that the election notice was of no effect because it was in the face of the statute. The vote, therefore, upon the bonds was of no force and did not authorize the issuance of the bonds.

We are also satisfied that the board of directors were not authorized to construct the building. The board of directors of a school district of the third class are not authorized to build school buildings except by authority of the electors of their district. Rem. Code, §§ 4493, 4538. The latter section provides that the board shall build or remove schoolhouses *when directed by a vote of the district to do so.* Section 4664, Rem. Code, provides that:

"Any board of directors may, at its discretion and shall, upon a petition of a majority of the legal voters of their district, call a special meeting of the voters of the district, to determine . . . whether or not the district shall build one or more schoolhouses; . . ."

It is conceded that the board of directors, prior to the passage of the resolutions hereinbefore set out, had not been authorized by the legal voters in the district to construct a schoolhouse. The resolution to build a schoolhouse was passed without any authorization of the board to that effect. The election upon the question of bonds did not authorize the directors to construct a schoolhouse, because the election for the bonds was not in accordance with the statute. Many electors who voted for the bonds may have been in favor of building the schoolhouse upon a bond issue, when they were not willing to construct the building without these bonds.

It is argued by the appellant that there is a defect of parties defendant, that the school district was a necessary party defendant. There is much force in the reasoning of the appellant upon this question, but this court has held that, where

the trustee is defendant, he alone may be sued without joining the *cestui que trustent* with him. *Thompson v. Price*, 37 Wash. 394, 79 Pac. 951; *Burdick v. Kimball*, 53 Wash. 198, 101 Pac. 845.

The county collected the tax for the school district, and it was not necessary to make the school district a party in order to recover the illegal tax.

It is next argued by the appellant that the action was not brought in time, because the respondent did not protest the levy of the tax at the time it was made by the county commissioners. If the tax was void, as we have held, it was not necessary for the respondent to protest its levy. It could wait until the tax was attempted to be collected and then pay under protest and recover back, as was held in the following cases: *Wyckoff v. King County*, 18 Wash. 256, 51 Pac. 379; *Tozer v. Skagit County*, 34 Wash. 147, 75 Pac. 638; *Owings v. Olympia*, 88 Wash. 289, 152 Pac. 1019.

We are of the opinion, therefore, that the trial court properly granted a judgment on the pleadings. The judgment is affirmed.

PARKER, FULLERTON, and HOLCOMB, JJ., concur.